# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **ADOLPHUS DIXON,** | : | **MOTION TO VACATE** |
| **Movant,** | : | **28 U.S.C. § 2255** |
| | : | |
| **v.** | : | **CRIMINAL INDICTMENT NO.** |
| | : | **1:08-CR-0419-CAP-AJB-1** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | **CIVIL FILE NO.** |
| | : | **1:11-CV-4560-CAP-AJB** |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Movant, Adolphus Dixon, has filed a 28 U.S.C. § 2255 motion to vacate, set

aside, or correct his federal sentence entered under the above criminal docket number.

The matter is before the Court on the § 2255 motion, [Doc. 101], Movant's motion for

an evidentiary hearing, [Doc. 102], and Respondent's response, [Doc. 106]. For the

reasons discussed below, Movant's motion to vacate and motion for an evidentiary

hearing are due to be denied.

## I.    Background

The grand jury for the Northern District of Georgia charged Movant with five

counts of armed robbery, 18 U.S.C. § 1951; five counts of brandishing a firearm during

a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii); and one count of attempted bank

robbery, 18 U.S.C. § 2113. [Doc. 17.] Movant pleaded not guilty and proceeded to

trial represented by Anna Blitz and Jeffrey Ertel. [Docs. 25, 64.] The jury found

Movant guilty on all counts. [Doc. 70.] On January 8, 2010, the Court imposed ten

concurrent life terms of imprisonment and one concurrent 240-month term of

imprisonment. [Doc. 81.] Movant directly appealed, represented by Ms. Blitz and

Mr. Ertel, and, among other things, contested the district court's rejection of his gender-

based *Batson*[1] challenge. *See United States v. Dixon*, 401 Fed. Appx. 491, 492

(11th Cir. Oct. 29, 2010). The Eleventh Circuit Court of Appeals found no error and

affirmed the judgment against Movant. *Id*. at 493, 495. On February 28, 2011, the

United States Supreme Court denied *certiorari*. *Dixon v. United States*, _ U.S. _,

131 S. Ct. 1589 (2011).

In his § 2255 motion, Movant presents the following six grounds for relief:[2]

(1 & 2) trial and appellate counsel performed ineffectively by failing to raise a

"comparative analysis" argument to show that the prosecution used discriminatory

---

[1]     The Equal Protection Clause does not allow the use of a peremptory strike
to remove a juror based on the juror's race or gender. *See J.E.B. v. Alabama ex rel.
T.B,* 511 U.S. 127, 128-29 (1994) (gender); *Batson v. Kentucky,* 476 U.S. 79, 89 (1986)
(race). Although Movant's challenge was based on gender, the Court refers to his
challenge as a *Batson* challenge.

[2]     Movant presents four grounds in his form § 2255 motion, and presents six
grounds in the full presentation of his claims, contained in his motion for an evidentiary
hearing.

AO 72A
(Rev.8/8
2)

peremptory strikes during jury selection, [Doc. 102 at 10-13], (3) trial and appellate counsel performed ineffectively by not attempting to discredit false statements regarding the handgun and by failing to argue that there was no proof to show that the handgun was real, [*id*. at 14-15], (4 & 5) the prosecution used discriminatory peremptory strikes against women during jury selection and the district court erred in overruling Movant's *Batson* challenge to those strikes, [*id*. at 16-25]; and (6) trial and appellate counsel performed ineffectively by failing to argue that no firearm was ever recovered from Movant, his residence, or his vehicle, [*id*. at 26-28.]

## II.  <u>28 U.S.C. § 2255 Standard</u>

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255. Section 2255 relief is limited.  A § 2255 motion "may not be a surrogate for a direct appeal," and a defendant "must assert all available claims on direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004).  A federal habeas court may not grant "collateral relief on a matter raised on direct appeal." *Gilbert v. United States*, 640 F.3d 1293, 1331 (11th Cir. 2011) ("[O]nce a matter has been decided adversely to

3

AO 72A
(Rev.8/8
2)

a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." (quoting *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)) (internal quotation marks omitted)). "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). Notwithstanding important interests in finality, however, a constitutional claim of ineffective assistance of counsel, if not otherwise waived, is properly raised on collateral review in order to allow for adequate development and presentation of the facts pertinent to such a claim. *Massaro v. United States*, 538 U.S. 500, 505-09 (2003).

The Court will grant a hearing on a motion to vacate unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255) (internal quotation marks omitted). Because, as indicated by the discussion below, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255, an evidentiary hearing is not warranted.

AO 72A
(Rev.8/8
2)

## III. Discussion

### A. Grounds One and Two – Ineffective Assistance of Counsel, Peremptory Strikes

After the jury selection process, Movant argued that "the government exercised five of its six peremptory strikes on the panel, six of seven total against women. And we think that makes out a prima facie case of gender discrimination and request[] that the government be required to give gender-neutral reasons." [Doc. 90 at 79.] The Court stated, "by my calculation, you would need for the panel makeup to match the jury box, you would need at least seven to twelve jurors to be female, which there are. There are eight jurors of the twelve in the box that are female . . . . Make your proffer as to why you exercised each strike as to each female juror." [*Id*. at 80.] The government inquired whether the Court had found that Movant had made a prima facie case of gender discrimination, and the Court responded, "I really do not find so, but I am going to ask you to state for the record gender-neutral reason for your strike." [*Id*.]

The government stated that it struck (1) Juror Seven because she had a science background and dealt with a lot of sewage, (2) Juror Eight because she was unemployed and seemed disinterested when answering questions, (3) Juror Twenty because she worked in telecommunications, and (4) Juror Fifteen because she said her

5

sister had a drug problem and she worked for Avon. [*Id*. at 80-81.] Movant objected that the reasons were pre-textual – arguing that other potential jurors had scientific backgrounds and other potential jurors were unemployed. [*Id*. at 81, 84.]

The Court stated, "I don't find . . . , with seven of the twelve jurors being female . . . , I don't find a pattern of excluding female jurors." [*Id*. at 83.] The Court also stated that it noted and accepted the government's explanation and that it denied Movant's motion/challenge. [*Id*. at 84.]

On direct appeal, Movant argued that the trial court erred in overruling his *Batson* challenge to the prosecution's use of discriminatory peremptory strikes against women during jury selection. Brief of Appellant at 17, *United States v. Dixon*, No. 10-10313-EE (11th Cir. May 26, 2010). Movant argued (1) that the government failed to meet its burden under *Batson's* three-part test to show gender-neutral reasons for its strikes – it "provided reasons that applied with equal force to jurors the government did not strike" – and (2) that the court erred when it overruled Movant's objection that the government's reasons were pre-textual. *Id*. Comparing the stricken jurors to non-stricken jurors, Movant asserted (1) as to Juror Seven, that five non-stricken jurors also had science backgrounds; (2) as to Juror Eight, that other jurors also were unemployed

6

and that it was unclear whether Juror Eight was, in fact, unemployed; and (3) as to Juror

Twenty, that another juror also worked in telecommunications. *Id*. at 14-15, 23-25.

The government argued that Movant's claim failed because he never had

established a prima facie case of gender discrimination. *See* Reply Brief of Appellant

at 1, *Dixon*, No. 10-10313-EE (11ᵗʰ Cir. July 27, 2010). Movant, relying on *Hernandez

v. New York*, 500 U.S. 352, 359 (1991),[3] replied that whether or not he had established

a prima facie case of gender discrimination became irrelevant when the government

offered its gender-neutral reasons for the strikes and that "the only issue left to be

determined [was] whether the Government's proffered reasons presented to the district

court were **in fact** gender-neutral." Reply Brief of Appellant at 1-2, *Dixon*, No. 10-

10313-EE (emphasis in original).

The Eleventh Circuit found that –

> In the light of the lack of disparity between the percentage of women
> struck by the government and the make-up of both the venire and the jury,

---

[3]     In *Hernandez*, the Court stated, "[t]he prosecutor defended his use of
peremptory strikes without any prompting or inquiry from the trial court. As a result,
the trial court had no occasion to rule that petitioner had or had not made a prima facie
showing of intentional discrimination. This departure from the normal course of
proceeding need not concern us . . . . Once a prosecutor has offered a race-neutral
explanation for the peremptory challenges and the trial court has ruled on the ultimate
question of intentional discrimination, the preliminary issue of whether the defendant
had made a prima facie showing becomes moot." *Id.*, 500 U.S. at 359.

7

the district court did not clearly err in finding that there was no inference of discrimination on the basis of gender. The government used 67 percent of its peremptory challenges against women, but that percentage was consistent with both the percentage of women on the venire, which was 17 of 28 or 61 percent, and the percentage of women who served on the jury, which was 8 of 12 or 67 percent. The district court was entitled to find that Dixon failed to prove a pattern of discrimination. We affirm that decision.

*Dixon*, 401 Fed. Appx. at 493.

Movant argues in Grounds One and Two of his § 2255 motion that trial and appellate counsel performed ineffectively by failing to raise a "comparative analysis" argument – comparing the jurors that the prosecution struck with jurors the prosecution allowed to serve – to show that the prosecution used discriminatory peremptory strikes during jury selection.[4] [Doc. 102 at 10-13.] Movant presents the same comparison between stricken and non-stricken jurors that he presented on direct appeal. [*Id*. at 5.] Movant asserts, without explanation, that there is a reasonable probability that the result

---

[4] Movant argues that the government's proffered reasons were pre-textual based on a comparative analysis of stricken versus non-stricken jurors and because their proffered reasons otherwise were not supported by the record. [Doc. 101 at 5.] It is apparent in Movant's full presentation of Grounds One and Two, [Doc. 102 at 10-13], that he complains regarding counsel's performance in showing discriminatory strikes based on a comparative analysis of jurors. Although Movant mentions in passing other alleged shortcomings in the government's proffered reasons, [Doc. 102 at 5-6], he does not clearly complain regarding counsel's performance in showing discriminatory strikes on any another basis, [*Id*. at 10-13]. The Court construes Movant's Grounds One and Two as raising an ineffective assistance claim only on the comparative analysis issue.

AO 72A
(Rev.8/8
2)

of the proceedings would have been different but for the deficiency of counsel. [*Id*. at 10-13.] The government responds that Movant fails to show that counsel was deficient because counsel raised the same arguments at trial and on appeal that Movant now raises. [Doc. 106 at 5-7.]

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a movant must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92. The Court may resolve an ineffective assistance claim based on either of the above prongs. *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000). Under the first prong, a movant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Under the second prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The movant has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice. *Wood v. Allen*,

9

542 F.3d 1281, 1309 (11th Cir. 2008) (quoting *Strickland*, 466 U.S. at 693) (internal quotation marks omitted). The movant has the burden of establishing his claim by a preponderance of competent evidence. *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). "The standards applicable to [a movant's] claims of ineffectiveness against trial counsel apply equally to the charges leveled against his appellate lawyer." *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001). Absent a showing "regarding the effect, if any, that a different [appellate] brief would have had on the outcome of proceedings," under *Strickland*, there is no ineffective assistance of appellate counsel. *Id*. at 1188.

A three-part test exists for resolving Equal Protection challenges to peremptory strikes. "First, the party challenging the peremptory strike must establish a *prima facie* case of discrimination." *Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 636 (11th Cir. 2000) (citing *Batson*, 476 U.S. at 96). "Second, if the court finds that a *prima facie* case of discrimination is proven, the party making the peremptory strike is afforded the opportunity to articulate a non-discriminatory explanation for the strike." *Id*. "Third, if a non-discriminatory reason is offered, the court must determine whether the party challenging the strike has met its burden of proving the existence of purposeful discrimination." *Id*.

10

In order to establish a *prima facie* case of racially discriminatory use of peremptory strikes, the party objecting to a peremptory strike bears the burden of establishing facts sufficient to support an inference of racial discrimination. The trial court must examine whether the party has shown sufficient "relevant circumstances" to raise an inference that the opposing party seeks to exclude the prospective juror on account of race [or gender]. In *Batson*, the Supreme Court offered two examples of circumstances that may support such an inference: (1) engaging in a "pattern" of strikes against venire members of one race, or (2) questions or statements during voir dire or in exercising challenges that suggest a discriminatory purpose.

*Id*. at 636 (citation omitted). In establishing a *prima facie* case of discrimination, relevant circumstances also may include comparisons between stricken and non-stricken jurors, which show that persons accepted as jurors have the same qualities as stricken jurors. *Capers v. Singletary*, 989 F.2d 442, 447 (11th Cir. 1993).

[T]he establishment of a *prima facie* case is an absolute precondition to further inquiry into the motivation behind the challenged strike. . . . Thus, a district court may not require an explanation for a peremptory strike unless and until it satisfies itself that a *prima facie* case has been established. Similarly on appeal, "unless it concludes that a *prima facie* showing was made, an appellate court should neither reverse a trial court's action refusing to disallow challenged strikes, nor should it affirm a trial court's action disallowing strikes." Accordingly, the threshold task in considering a *Batson* challenge, for a district court as well as this Court, is to determine whether a *prima facie* case was established. If the answer is no, then the inquiry ceases, and the challenge should be denied.

*Cent. Ala. Fair Hous. Ctr., Inc.*, 236 F.3d at 636 (citation omitted).

AO 72A
(Rev.8/8
2)

Here, although the Court requested and accepted the government's proffered

explanation, it first found that Movant had failed to make a *prima facie* case.  Further,

the Eleventh Circuit Court of Appeals found no error in the Court's determination that

Movant had failed to make a *prima facie* case.  Accordingly, the Court does not now

inquire into whether counsel was ineffective in regard to the second or third steps of the

*Batson* challenge, *see id.*, but instead inquires into counsel's performance in regard to

raising a comparative-analysis argument to establish a prima facie case of

discrimination, *see Capers*, 989 F.2d at 447.[5]

Movant raises in his § 2255 motion nothing significant that counsel did not raise

either before trial or on appeal in comparing the stricken and non-stricken jurors.  Thus,

---

[5]     Movant's *Hernandez* argument – that it is moot whether or not he established a *prima facie* case and that the only issue is whether the government's reasons were gender-neutral – fails.  *See supra* page 7 and note 3.  In *Hernandez*, whether an inference of discrimination (the *prima facie* case) had been shown was found moot when the court had made no ruling on the *prima facie* case but had ruled on the ultimate question of intentional discrimination.  *Id.*, 500 U.S. at 359.  That is not the case here because the Court *did* rule on Movant's *prima facie* case and found no inference of discrimination.  When the district court has ruled on the *prima facie* case it is not moot.  *See United States v. Stewart*, 65 F.3d 918, 924-25 (11th Cir. 1995) (holding that when the district court has ruled on the *prima facie* case it is not moot and the appellate court must review that ruling); *see also Cent. Ala. Fair Hous. Ctr., Inc.*, 236 F.3d at 638 (reviewing the *prima facie* ruling, finding that the district court erred in finding that defendants had established a *prima facie* case under *Batson*, and stating that "[b]ecause no *prima facie* case was established . . . our analysis ceases without consideration of the reasons eventually proffered by the plaintiffs" (citing *Stewart*)).

AO 72A
(Rev.8/8
2)

the only question is whether Movant has shown that counsel was deficient in failing to press the comparative argument as part of his *prima facie* showing and whether, if he had, there is a reasonable probability that it would have changed the outcome. Movant fails to do so.

Before trial, the Court was aware of the comparisons articulated by Movant on the jurors' unemployment and scientific backgrounds and, nonetheless, did not recede from its ruling that Movant had failed to make a *prima facie* case.[6]  The Eleventh Circuit Court of Appeals was aware of the comparisons articulated by Movant in his appellate brief (comparisons on jurors' unemployment, scientific backgrounds, and telecommunication employment) and, nonetheless, affirmed the Court's ruling that Movant had failed to make a *prima facie* showing of discrimination. There is no

_____

[6]     The Court is aware that a *Batson* analysis is meant to be "linear, not circular." *Stewart*, 65 F.3d at 925 ("[O]nce a prima facie showing has been made and explanations for the challenged strikes have been required, a trial court's ruling on the validity of those explanations does not retroactively affect the correctness of its prima facie case determination." "The trial judge should not revisit the first step in the process after each additional step, nor will we."). The court in *Stewart* analyzed whether a finding of a *prima facie* case should be revisited based on subsequent explanations for challenged strikes and found that it would be counter to the "orderly step-by-step process for resolving issues involving allegations of racial discrimination." *Id*. The court in *Stewart* did not hold that it would be counter to the step-by-step process for a court to (1) hear for-the-record strike explanations (that could have been relevant to the *prima facie* case) and (2) then stand by a prior finding that a *prima facie* case had *not* been made.

13

reasonable probability that the outcome would have been different if counsel, at trial or on appeal, plainly had pressed the comparative-analysis argument as a part of his *prima facie* showing.

**B.** **Ground Three – Ineffective Assistance of Counsel, Was the Gun Real or a Toy**

Movant and Christopher Smith both were charged for armed robbery and brandishing a firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 1951, and 2, based on the robberies of Family Dollar stores on Moreland Avenue, Martin Luther King Jr. Drive, and Cascade Road, in Atlanta, Georgia. [Doc. 17 at 1-5.] Movant also was indicted for armed robbery and brandishing a firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 1951, based on the robberies of Super IGA Foods, on Moreland Avenue, and Rite Aid, on Memorial Drive, also in Atlanta, Georgia. [*Id.* at 3-6.]

At trial, Nicole Malone, a customer at the Martin Luther King Jr. store testified to seeing a gun during the robbery and described it as a "revolver" – "it had a big barrel and I just remember saying I got to get out of here because I don't want to feel that on my back. . . . I continued to walk out of the store with my baby." [Doc. 90 at 176-77, 181-82.] Patricia Sapp, an employee at the Martin Luther King Jr. store, also described the gun used during the robbery as a revolver. [*Id.* at 151.] Darce Loggins, cashier at

AO 72A
(Rev.8/8
2)

the Moreland Avenue store, testified that Movant pointed a gun at his face at a distance of about one or two feet and that he dropped the change that he was holding, put his hand up, and stepped back, at which point Movant jumped the counter and began taking money from the register. [*Id*. at 131.] Shavonte Ferrell, Assistant Manager at the Moreland Avenue store, testified that she saw the gun and that she then opened the "drop box" and gave Movant the money. [*Id*. at 111-12.] Jonathan Lowe, cashier at the Cascade Avenue store, testified that "they had put the gun on me," that he backed up from his cash register because he did not want to get shot, and that one of the robbers took the money from his register. [Doc. 91 at 25-26.] Romedia Walter, cashier at Super IGA Foods, testified that, just as she was about to give the robber change from his purchase, he pulled a gun on her and told her to back up and move; that she backed up and moved; and that he took the money from her register. [*Id*. at 37, 43.] Chiara Warren, cashier at Rite Aid, testified that when Movant showed her his gun, she did not think he was playing and "just did what he told me . . . so I wouldn't get hurt or anything." [*Id*. at 167.]

Smith – who pleaded guilty – testified that Movant participated in the Family Dollar store robberies, that Movant possessed a firearm during the Moreland Avenue robbery, that Movant gave him the firearm during the Martin Luther King Jr. Drive

AO 72A
(Rev.8/8
2)

robbery, and that he, Smith, possessed and used the firearm during the Cascade Road robbery. [Doc. 92 at 26-27, 32, 35, 46-47.] Smith agreed that the gun was a .38 revolver, which held bullets. [*Id*. at 54, 86-87.]

Movant argues that trial and appellate counsel performed ineffectively because – although no handgun was recovered and there was no photographic array for witnesses to use in identifying the handgun – counsel did not attempt to discredit government witnesses' false statements regarding the handgun, question witnesses as to whether they "felt" that the gun was real or a toy, or argue that there was no proof to show that the handgun was real as opposed to being a toy. [Doc. 102 at 14-15.] Movant asserts, without explanation, that there is a reasonable probability that the result of the proceedings would have been different but for the deficiency of counsel. [*Id.*]

The standard for ineffective assistance reviewed earlier applies. It is a crime to brandish a "firearm" during and in relation to a crime of violence. 18 U.S.C. § 924(c)(1)(A)(ii). "A 'firearm' [under § 924(c)] is any weapon 'which will or is designed to or may readily be converted to expel a projectile by the action of an explosive,' the 'frame or receiver of any such weapon,' or 'any firearm muffler or firearm silencer.' " *United States v. Hunt*, 187 F.3d 1269, 1270 (11th Cir. 1999) (quoting 18 U.S.C. § 921(a)(3)). When a firearm used in a robbery is not recovered,

16

the testimony of lay witnesses that the defendant used a firearm or gun during the crime is sufficient to support a jury's conclusion that the article used was a "firearm." *Id*. at 1271. "The government need not offer the gun itself into evidence or produce an expert witness to identify a 'firearm.'" *Id*. ("The Government offered the testimony of two witnesses who, at close range, observed" the defendant "point a gun at them. Furthermore, the bank surveillance photographs and the videotape of the crime clearly show [the defendant] holding what appears to be a gun. The jury in this case had the evidence before it and drew a reasonable inference that the object in [the defendant's] hand was a real gun and not a toy.").

Movant does not clearly identify the witness statements that, allegedly, were false; provides nothing to show that any particular statement at trial regarding the gun was false; and does not propose any viable challenge that counsel could have launched to discredit the testimony regarding the use of a gun during the robberies. Absent the proffer of any workable challenge that counsel could have raised, at trial or on appeal, Movant fails to show that counsel was deficient.

Further, there was ample evidence showing that the device used in Movant's crimes was a firearm and not a toy. *See Hunt*, 187 F.3d at 1271. It is readily apparent from the victims' various reactions to the gun – quickly leaving the store to avoid

AO 72A
(Rev.8/8
2)

danger, putting hands up, backing away from cash registers and allowing the robber to take money, opening a drop box and giving money to the robber, and doing whatever the robber said to avoid getting hurt – that any defense questioning on whether the victims/witnesses "felt" the gun was real or a toy would have confirmed that they did believe the gun was real. In light of the testimony by numerous witnesses – that they saw a gun during the robberies, the witnesses'/victims' demonstrated belief that the gun was real, and the testimony that the gun was a "revolver" or a ".38 revolver" and that it held bullets and had a "big barrel," [Doc. 90 at 181-82; Doc. 92 at 54] – there is no reasonable probability that an argument by counsel that there was no proof to show that the gun was actually real and that it may simply have been a toy would have changed the jury's conclusion that Movant's crime involved the use of a firearm. Movant fails to show ineffective assistance of counsel on this issue.

### C.   Grounds Four and Five – Peremptory Strikes

In Ground Four, Movant argues that the government violated the Constitution by using discriminatory peremptory strikes against women during jury selection. [Doc. 102 at 16-20.] In Ground Five, Movant argues that the district court erred in overruling his *Batson* challenge to the prosecution's use of peremptory strikes against women. [Doc. 102 at 21-25.]

AO 72A
(Rev.8/8
2)

A habeas court cannot grant "collateral relief on a matter raised on direct appeal." *Gilbert*, 640 F.3d at 1331. As stated earlier, on direct appeal Movant argued that this Court erred in overruling his challenge to the government's use of peremptory strikes. Brief of Appellant at 17, *Dixon*, No. 10-10313-EE. The Eleventh Circuit Court of Appeals found no error in the Court's decision, and the Eleventh Circuit's opinion forecloses Movant's repeated challenge to the Court's decision and the government's use of its strikes. Movant may not revisit these issues in a § 2255 proceeding.

### D. <u>Ground Six – Ineffective Assistance of Counsel, Recovery of the Firearm</u>

Movant argues that trial and appellate counsel performed deficiently by failing to argue that no firearm was ever recovered from Movant, his residence, or his vehicle, and that counsel's deficiency prejudiced him. [Doc. 102 at 26-28.]

The *Strickland* standard again applies. As stated earlier, "[t]he government need not offer the gun itself into evidence" for a jury to find that a defendant used a firearm while committing a crime of violence under § 924(c)(1). *Hunt*, 187 F.3d at 1271. Based on the evidence before the jury that a firearm was possessed and used during the robberies at issue, there is no reasonable probability that the outcome would have been

AO 72A
(Rev.8/8
2)

different if counsel had argued, at trial or on appeal, that the actual gun had not been located or submitted into evidence.

## IV.   Certificate of Appealability (COA)

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." To satisfy that standard, a movant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Lott v. Attorney Gen.*, 594 F.3d 1296, 1301 (11th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).

> "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," . . . a certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of

20

reason would find it debatable whether the district court was correct in its procedural ruling."

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

It is recommended that a COA is unwarranted because it is not debatable that Movant has failed to show ineffective assistance of counsel and that his *Batson* challenge has already been decided on direct appeal and may not be relitigated. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## V.   <u>Conclusion</u>

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's § 2255 motion, [Doc. 101], and motion for an evidentiary hearing, [Doc. 102], be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to terminate the referral of this § 2255 motion to the Magistrate Judge.

AO 72A
(Rev.8/8
2)

**IT IS SO DIRECTED and RECOMMENDED**, this  18th  day of  July ,
2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)